**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KIRSTEN BERG, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:07-cv-01393-ARH |
| | ) | |
| v. | ) | Judge Nora Barry Fischer |
| | ) | |
| AETNA FREIGHT LINES | ) | Amy Reynolds Hay, Magistrate Judge |
| | ) | |
| and | ) | |
| | ) | |
| TRANSPORTATION INVESTMENTS, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | FILED ELECTRONICALLY |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO
1) DISMISS TRANSPORT INVESTMENTS, INC., 2) DISMISS COUNT III, AND 3)
TRANSFER VENUE**

Defendants, Heritage Express Company d/b/a Aetna Freight Lines, Inc. ("Aetna") and Transport Investments, Inc. ("TII") (collectively, "Defendants"), submit this reply brief in support of their Motion to 1) Dismiss TII, 2) Dismiss Count III, and 3) Transfer Venue ("Motion").

**I.    TII Should Be Dismissed From this Case.**

    **A.    The Operations of Aetna and TII Are Not So Entangled to be Considered a Single-Employer.**

In her Response to Defendants' Motion ("Response"), Plaintiff Kirsten Berg ("Berg") acknowledges that entanglement of operations is the test for determining single-employer status under Title VII. Berg argues that the following points demonstrate that operations of Aetna and TII are sufficiently entangled for a finding of single-employer status:

- Correspondence from Aetna is printed on letterhead stating it is "[a] member of the TII family of companies."
- TII advertised for a job opening for a position that involved the solicitation of freight from shippers and logistics companies.
- Certain individuals at Aetna have E-mail addresses containing the phrase "transportinvestments.com."
- Aetna's website is located at www.transportinvestments.com/Aetna Main.htm.
- The event on the Gateway Clipper took place in Pittsburgh, Pennsylvania, and Dan Singer ("Singer"), Secretary/Treasurer of TII, was present at the event.

None of these points, however, demonstrates an entanglement of *operations*. For instance, Singer being at an Aetna-event does not mean that the operations of Aetna and TII are entangled for purposes of Title VII. Likewise, the fact that certain Aetna employees' E-mail addresses contain the phrase "transportinvestments" does not mean that Aetna and TII's operations are entangled.

As the Western District has recently noted, entanglement of operations is determined by factors such as whether the two entities share the same place of business or conduct the same type of business. *Joseph v. Access Data Corp.*, Civil Action No. 07-260, 2007 WL 4248520, at *6 (W.D. Pa. 2007) (attached as Exhibit D to Defendants' Motion). Other factors to consider, according to *Joseph*, are whether the two entities have "separate and independently-managed human resources policies, employee benefits procedures, and payroll systems." *Id.*

As Douglas McAdams ("McAdams") attested in his Affidavit, attached to Defendants' Motion as Exhibit A, TII and Aetna are located in different states and conduct different types of business. McAdams further attested that Aetna and TII have separate and independently-managed human resources policies, employee benefits procedures, and payroll systems. In

2

addition, as attested to by McAdams, TII did not exercise any day-to-day control over Berg, did not review her work, and did not pay or withhold her commissions.

These are the factors that should be considered in determining single-employer status—not non-operational factors like a company's letterhead announcement that the company is part of a family of companies. This being the case, McAdams' Affidavit contains all the evidence necessary to dismiss TII from this action.

In any event, the points that Berg cites as examples of operational entanglement do not show any entanglement at all:

- "A member of the TII family of companies" means that Aetna is owned by or is associated with TII—nothing more. It is in small type and in quotes. Aetna's letterhead does not suggest any entanglement with the other members of TII's family of companies.

- The TII advertisement, which is not related at all to Aetna, provides that "American Transport" was seeking to add one person to "its" [i.e., American Transport's] staff.

- An E-mail address showing a relationship to a parent company does not mean or even suggest an entanglement of operations.

- The TII website has a separate page for Aetna. That suggests a lack of entanglement and that Aetna has separate operations from TII and its other companies.

- Singer was at the event in Pittsburgh because, as Berg notes on Page 9 of her Response, "Aetna is part of the 'TII family of companies' owned by the Singer-McAdams group." Singer is a principal of TII, and the Gateway Clipper event gave him an opportunity to visit with Aetna's employees and agents. Mr.

3

Singer's alleged conduct against Berg certainly does not make TII Berg's employer. Neither Singer nor TII paid Berg or directed her day-to-day activities in any way.

Finally, with respect to whether this Court should dismiss TII, Berg's reliance on *Sinacole v. iGate Capital*, Case No. 2:04cv0921, 2006 WL 3759744 (W.D. Pa. Dec. 19, 2006), is overreaching. The defendant in *Sinacole* worked for several subsidiaries of the defendant, and was told that she could work for the defendant-holding company and its subsidiaries. *Sinacole*, at *2. Furthermore, *Sinacole* found that certain evidence showed that the defendant, through various restructurings, was in fact the plaintiff's employer, that the defendant "and all its subsidiaries" terminated the plaintiff and that the defendant and its agents were not always clear as to the separateness in operations of the defendant and its subsidiaries. *Id.*, at *5. Here, Berg cannot say that TII ever paid her, directed her activities, or terminated her. The only reason Berg seeks to add TII as a party-defendant is for the convenience of her attorney.

### B.  TII Did Not Receive Notice of Berg's EEOC Charge.

Furthermore, as noted in Defendants' Motion, TII never received notice of Berg's EEOC Charge of Discrimination. As the Third Circuit stated in *Schaefer v. Bd. of Pub. Ed. of the School Dist. of Pittsburgh, PA*, 903 F.2d 243, 251 (3d Cir. 1990), "A Title VII action ordinarily may be brought only against a party previously named in an EEOC action."

As stated in Defendants' Motion, the Third Circuit does recognize a limited exception "when the unnamed party received notice [of the EEOC charge] and when there is a shared commonality of interest with the named party." *Id.* at 252. That exception, however, does not apply here. First, there is no commonality of interests for the reasons stated above and in Defendants' Motion. Second, TII did not receive notice of Berg's EEOC Charge. While it is

4

true that McAdams received a copy of Berg's Charge, he received this in his capacity as president of *Aetna*, not TII.

As Berg correctly notes in her Response, the purpose of the notice requirement is to inform an entity of the notice of the charges. It cannot be stated that TII was given notice of Berg's charges against it, simply by virtue of the fact that McAdams was and still is president of both Aetna and TII. Aetna and TII, as demonstrated in Defendants' Motion, are two separate companies.

Furthermore, Berg is completely wrong when she says, "TII has not been prejudiced by not being a named party in the charge as it had notice of the charges against Mr. Tomasko, and had the opportunity, through its President, to participate in the conciliation and investigate the charges." Response, at p. 10. Berg omits the fact that her Complaint contains allegations relating to Singer ("the Secretary/Treasurer of TII"), while the EEOC Charge made absolutely no reference to him. Response, at p. 5. Tomasko was an employee of Aetna only. Had TII been named a party in Berg's EEOC Charge, TII could have investigated and, perhaps, conciliated the matter at least in part. In this respect, Berg cannot legitimately contend that TII was not prejudiced by her failure to identify it as a named party on her EEOC Charge.

For these reasons and the reasons stated in Defendants' Motion, TII should be dismissed from this case.[1]

## II. Berg's Title VII Retaliation Claim Should Be Dismissed.

In her Response, Berg attempts to salvage her retaliation claim by mischaracterizing the arguments contained in Defendants' Motion and citing to inapplicable law.

---

[1] Defendants are confused by Section III.A.2 of Berg's Response. Defendants are not seeking, at this time, to dismiss Berg's Title VII hostile work environment claim against Aetna.

5

### A. Berg Failed to Exhaust Her Administrative Remedies.

In her Response, Berg argues, "Defendants here allege that Plaintiff has not exhausted her administrative remedies simply because she did not check the box for retaliation on the EEOC Charge of Discrimination." *See* Response, at p. 11. This, however, was *not* the argument advanced by Defendants.

Defendants fully understand that a mere failure to check the box for retaliation on an EEOC form is not fatal to a Title VII retaliation claim. In their Motion, Defendants pointed out that Berg failed to exhaust her administrative remedies because "[she] did not check off the 'Retaliation' box on the EEOC form *and did not make a single reference to any retaliation in her Charge of Discrimination or of any complaints rendered prior to her termination*." Motion, at p. 9 (emphasis added).

The Western District recently recognized that a Title VII sexual harassment claim is *not* synonymous with a Title VII retaliation claim. *Morrison v. Nat'l Cty. Home Loan Servs., Inc.*, Case No. 2:07cv99, 2007 WL 4322329 (W.D. Pa. 2007), attached as Exhibit E to Defendants' Motion. As *Morrison* stated, "Demonstrating a claim for retaliation under Title VII, imposes still yet a different burden . . ." *Id.* at *4. That being the case, Berg had to have made at least some reference in her EEOC Charge that could remotely be considered retaliatory conduct for purposes of Title VII's exhaustion requirement. Berg did no such thing, and, thus, she failed to exhaust her administrative remedies as required in bringing a Title VII retaliation claim.

In her Response, Berg cites two cases relating to Title VII's exhaustion requirement, but those cases can easily be distinguished. In fact, those exact cases were distinguished in *Morrison*. In *Miklos v. Principi*, No. 01-cv-2205, 2006 WL 1438159 (W.D. Pa. 2006), allegations of retaliation were expressly raised in the plaintiff's EEOC Charge, and, therefore, the court "found that the plaintiff's retaliation based hostile work environment claims were fairly

6

within the scope of the EEOC complaint." *Morrison*, at *5 (distinguishing *Miklos*). Specifically, the plaintiff in *Miklos* alleged that she suffered reprisal retaliation when her work schedule was changed. *Id.* at *3. In this regard, *Miklos* is not like the instant case, as Berg made no reference to any facts that could be interpreted as retaliation in her EEOC Charge of Discrimination.

The case of *Butterbaugh v. Chertoff*, 479 F. Supp.2d 485 (W.D. Pa. 2007), as relied on by Berg, is also distinguishable. In *Butterbaugh*, the plaintiff had checked the box for retaliation, but did not check the box for sexual harassment. The *Butterbaugh* court held that the plaintiff exhausted her administrative remedies with respect to her sexual harassment claim—even though she did not check the sexual harassment box—because the retaliation claim specifically referenced sexual harassment.

Here, Berg did not check the retaliation box **and** she did not make any reference to retaliation in her Charge. For this reason, *Butterbaugh* is also inapposite.

### B. Berg Did Not Complain About the Alleged Sexual Harassment Until After Aetna Terminated Her Employment.

Berg's retaliation claim must be dismissed for yet another reason. According to Berg herself, she did not complain about the alleged sexual harassment until ***after*** Aetna terminated her employment.[2]

Having already been terminated, Berg's complaint of unlawful discrimination to McAdams could not have invoked the anti-retaliation provisions of Title VII—even assuming that Berg was an employee of Aetna or TII in the first place. And even if her post-termination complaint to McAdams could somehow be considered protected activity, there is still no causal connection between her complaint to McAdams and her prior termination.

---

[2] For purposes of Defendants' Motion and this Reply Brief only, Defendants will proceed under the false premises that Berg was an employee of Aetna and that Aetna terminated her employment.

Notwithstanding the Third Circuit's definition of "protected activity," in *Moore v. Philadelphia,* 461 F.3d 331, 340-341 (3d Cir. 2006), Berg still contends that she engaged in protected activity when she resisted Tomasko's alleged sexual advances. Berg contends that protected activity can be found in a retaliation case, even in the absence of a complaint. Berg relies on *Boyd v. James S. Hayes Living Health Care Agency, Inc.*, 671 F. Supp. 1155 (W.D. Tenn. 1987), for this proposition. First, as this Court is well aware, *Boyd* is not binding authority. Moreover, *Boyd* is factually distinguishable from the instant case. In *Boyd*, the plaintiff complained to management about the alleged sexual harassment ***prior*** to her termination. In finding there to be Title VII retaliation, *Boyd* stated, "[T]he plaintiff was discharged within a few weeks of [i.e., after] her initial opposition and a few days of [i.e., after] her public denouncement of [her supervisor] at the staff meeting." *Id.* at 1167-68.[3]

For these reasons, Berg's Title VII retaliation claim must be dismissed.

### III.     This Case Should Be Transferred to the Northern District of Ohio.

As Defendants stated in their Motion, "Witness convenience is often considered the most important factor in determining transfer of venue." Motion, at p. 12 (citing 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3851, at 415-16 (2d ed. 1986); *Bolton v. Tesoro Petroleum Corp.*, 549 F. Supp. 1312, 1315 (E.D. Pa. 1982)). However, Berg's Response is completely devoid of any arguments addressing witness convenience. The reason for this is obvious—the witness convenience factor weighs heavily, if not entirely, in favor of transferring this case to the Northern District of Ohio.

---

[3] To date, the Third Circuit has not ruled on whether resisting an employer's sexual advances, on its own, constitutes protected activity for purposes of establishing Title VII retaliation. *See Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico*, 425 F. Supp.2d 206, 212-13 (D.P.R. 2006) ("Neither the First Circuit, nor any other circuit, has ruled on whether resisting an employer's sexual advances constitutes protected activity for purposes of establishing retaliation.")

8

Indisputably, Tomasko's alleged conduct lies at the heart of this case. Tomasko was the only individual identified in Berg's EEOC Charge of Discrimination, which forms the basis of Berg's Complaint. Needless to say, Tomasko is likely to be one of the more important witnesses, if not the most important witness, in this case.

Tomasko, as noted in Defendants' Motion, is a resident of Warren, Ohio. Moreover, most, if not all, of Aetna's critical witnesses regarding the alleged sexual harassment reside within the Northern District of Ohio. These were the exact points raised by Defendants in their Motion, and they were completely ignored by Berg in her Response.

The proposed transfer will also be more convenient for Aetna (which is based and headquartered in the Northern District of Ohio), while not further inconveniencing Berg (who is a resident of Oregon). Again, this point was raised by Defendants in their Motion and ignored by Berg in her Response.

Notwithstanding Defendants' arguments in favor of transfer, Berg contends that venue should remain in the Western District of Pennsylvania because of the few alleged events that transpired on the Gateway Clipper, even though Berg did not bring this action against the Gateway Clipper. Even a cursory review of Berg's Complaint, however, demonstrates that the substantial part of the actions or omissions giving rise to Berg's Complaint occurred in Warren, Ohio, and not the Gateway Clipper. And Aetna's Gateway Clipper event for Aetna's agents was sponsored by Aetna, not TII.

According to her Complaint, Berg was required to contact Aetna's headquarters in Warren, Ohio, in order for her freight to be authorized. Berg also alleges that she was required to fax load control sheets to Aetna so that Aetna could verify certain information. She also alleges that Aetna, not TII, paid her commissions and, at times, withheld certain commissions.

9

Berg also alleges that Tomasko sent E-mails from his computer in Warren, Ohio that she found offensive. She also alleges that Tomasko made what she found to be offensive remarks as he was driving her from Warren, Ohio to Pittsburgh, Pennsylvania. And Berg also alleges that Tomasko terminated her over the phone—an event that would have originated out of or be attributed to Aetna's Warren, Ohio headquarters, not the Gateway Clipper and not TII's Pittsburgh headquarters.

In these respects, the substantial part of the actions or omissions giving rise to Berg's Complaint occurred in the Northern District of Ohio, not the Western District of Pennsylvania. The few allegations relating to Singer on the Gateway Clipper do ***not*** change this fact. Indeed, according to Berg herself, she "constructively discharged herself due to ***Mr. Tomasko's*** sexual harassment," not Singer's alleged harassment. (Complaint, ¶ 24) (emphasis added).

For this reason and the reasons stated in Defendants' Motion, transfer to the North District of Ohio is entirely warranted.

## IV. Conclusion

For the foregoing reasons and reasons and evidence set forth in Defendant's Motion, Defendants request that their Motion be granted, and this Court enter an Order that dismisses TII from this action, dismisses Count III of the Complaint, and transfers this action to the Northern District of Ohio, Eastern Division (Youngstown).

Dated: April 15, 2008

Respectfully submitted,
VUONO & GRAY, LLC
By: s/Dennis J. Kusturiss
Dennis J. Kusturiss, Esq.
Pa. I.D. No. 28003
310 Grant Street
Suite 2310
Pittsburgh, PA 15219
(412) 471-1800
Fax: (412) 471-4477
E-mail: dkusturiss@vuonogray.com

BENESCH, FRIEDLANDER,
  COPLAN & ARONOFF LLP
By: s/Joseph N. Gross
Joseph N. Gross (Ohio Bar No. 0056241)
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
Tel:   (216) 363-4500
Fax:   (216) 363-4588
E-mail:  jgross@bfca.com

Counsel for Defendants Aetna Freight Lines, Inc.
and Transport Investments, Inc.

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was filed electronically on the 15th day of April, 2008 in accordance with the Court's Electronic Filing Guidelines. Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System. Parties may access this filing through the Court's Filing System.

s/  Joseph N. Gross
Joseph N. Gross