IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| KIRSTEN BERG, | ) | |
|---|---|---|
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-1393 |
| | ) | Judge Nora Barry Fischer/ |
| AETNA FREIGHT LINES; | ) | Magistrate Judge Amy Reynolds Hay |
| TRANSPORTATION INVESTMENTS, | ) | |
| INC., | ) | |
| Defendants | ) | |

## OPINION AND ORDER

HAY, Magistrate Judge

In this Title VII action, three Motions filed by Defendants, Aetna Freight Lines ("Aetna") and Transportation Investments, Inc. ("TII"), are pending: a Motion to Dismiss TII as a party, a Motion to Dismiss Count III of the Complaint, and a Motion for Transfer of Venue pursuant to 28 U.S.C. § 1404(a). The Court here addresses only the Motion for Transfer of Venue.[1] The remaining Motions will be considered separately, in a Report and Recommendation.

---

[1] A motion to transfer venue pursuant to 28 U.S.C. 1404(a) involves a non-dispositive pretrial matter which a magistrate judge may determine pursuant to 28 U.S.C. § 636(b)(1)(A). See Silong v. U.S., 5:05-CV-55-OC-10GRJ, 2006 WL 948048, at *1 n.1 (M.D. Fla. April 12, 2006); Blinzler v. Marriott Int'l, Inc., No. Civ. A. 93-0673L, 1994 WL 363920, at *2 (D.R.I. July 6, 1994); O'Brien v. Goldstar Tech., Inc., 812 F. Supp. 383 (W.D.N.Y. 1993); Russell v. Coughlin, No. 90 Civ. 7421, 1992 WL 209289 (S.D.N.Y. Aug. 19, 1992); Hitachi Cable Am., Inc. v. Wines, Civ.A. No. 85-4265, 1986 WL 2135 (D.N.J. Feb.14, 1986). This is true "because it can only result in the transfer of a case to another federal district, not in a decision on the merits or even a determination of federal jurisdiction." Adams v. Key Tronic Corp., No. 94 Civ. AO535, 1997 WL 1864, at *1 (S.D.N.Y. Jan. 2, 1997) (collecting cases). A court may examine facts outside the complaint in order to determine whether venue is proper. Karlberg European Tanspa, Inc. v. JK-Josef Kratz Vertriebsgeselschaft MbH, 699 F.Supp. 669, 770 (N.D.Ill. 1988).

**Background**

The Plaintiff, Kirsten Berg ("the Plaintiff" or "Berg"), a Medford, Oregon resident, filed a three count Complaint alleging that the Defendants created and maintained a hostile work environment, engaged in sexual harassment and gender discrimination, and retaliated against her by terminating her position, all in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq. Berg alleges that she began working from her home as a freight dispatcher for the Defendants in early August 2006. (Doc 1. at 3).[2] On March 7, 2007, she received a sexually inappropriate email from the work computer of her supervisor, Aetna's Vice President and General Manager, Thomas Tomasko ("Tomasko"), who worked and lived in Warren, Ohio. Ten days later, Tomasko drove Berg from Aetna's Ohio headquarters to a social event sponsored by TII for Aetna agents in Pittsburgh, Pennsylvania. During that trip - it is not clear whether the two were in Ohio or in Pennsylvania when this happened - Tomasko asked Berg whether she thought that he was "attractive" or "fat." (Doc. 1 at 4). He also claimed that his hands were cold, and touched Berg in an offensive manner. (Id.).

Later the same day, Berg and Tomasko attended the event in Pittsburgh aboard the Gateway Clipper, a vessel which may be rented for cruises of Pittsburgh's three rivers. Berg alleges that on this cruise, Tomasko broadcast sexually suggestive remarks about her over the vessel's sound system, and that these remarks were heard by other attendees. (Id. at 5). Then, in what seems to have been a more private moment, Tomasko told Berg that she was the "prettiest girl" at the event. (Id.). Berg claims that she was also approached by Daniel Singer ("Singer"), an officer of TII, who

---

[2]Aetna is a common and contract carrier headquartered and based in Warren, Ohio. Its business is to transport commodities throughout the United States. TII, a Delaware corporation headquartered in Pittsburgh, Pa., is "chartered to establish or acquire trucking companies, and to serve as a holding corporation for various trucking and related entities, such as Aetna." (Doc. 8 at 2).

2

"rubbed his hand up and down the back of Berg's dress," commenting that she had put it on backward. (Id.).

On April 2, 2007, Berg received a second sexually offensive email from Tomasko. (Id.). "On or about April 10, she constructively discharged herself due to Tomasko's sexual harassment," but Tomasko called her, and persuaded her to remain in her job. (Id.). She agreed. She resumed her duties the next day, but alleges that when, as part of a work-mandated procedure, she sought credit approval for a transaction from Aetna/TII, she was informed that the department could no longer process her credit requests because her employment had been terminated. Later in the day, Tomasko communicated with Berg, telling her that "we should, you, me, Aetna part ways." (Id at 6). Berg then notified Douglas McAdams, President of TII and Aetna, of Tomasko's offensive emails, but did not receive a response. (Id.). She filed a sexual harassment charge with the Equal Employment Opportunity Commission in early June 2007, (id.), and received a Notice of Right to Sue the following month. (Id. at 2). This action followed.

### **Establishing Venue For Purposes of Title VII**

Citing the general venue provisions of 28 U.S.C. § 1391, the Defendants contend that venue lies in the Northern District of Ohio where Aetna is based, Tomasko worked and resides, and where "a substantial part of the events or omissions giving rise to the claim occurred." (Doc. 8 at 11). The Defendants' reliance on Section 1391 is misplaced. Title VII's exclusive mandatory venue provisions are set out at 42 U.S.C. § 2000e-5(f)(3). Pursuant to this Section, venue in a Title VII action is proper:

(1) in any judicial district in the state in which the unlawful employment practice is alleged to have been committed,

(2) in the judicial district in which the employment records relevant to such practice are maintained and administered, or

> (3) in the judicial district in which the aggrieved person would have
> worked but for the alleged unlawful employment practice.

If none of these disjunctive options applies, the action is to be brought "within the judicial district in which the respondent has [its] principal office." (Id.).

Berg contends that venue is proper in the Western District of Pennsylvania because elements of the conduct comprising her claims, specifically Tomasko and Singer's deportment aboard the Gateway Clipper - and possibly Tomasko's comments on the car ride to Pittsburgh - occurred here. The Court agrees.

Title VII defines the term "unlawful employment practice" in relevant part as an employer's action "to discharge any individual, or otherwise to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . .(Id.). "In determining where an alleged discriminatory practice occurred, courts look not only to where the decisions were made, but also to where the discriminatory acts took place." Foley v. Sammons Preston, Inc., No. 03 Civ. 5485, 2004 WL 35438, at *2-3 (S.D.N.Y. 2004) (citing Cox v. Nat'l Football League, No. 97 C 3741, 1997 WL 619839, at *3 (N.D. Ill. 1997)). It is true that not all of the relevant acts alleged by Berg took place in Pennsylvania, but a number of them did. Thus, the venue requirements of Section 2005e-5(f)(3) are met.

The Defendants are correct that venue for purposes of Title VII would also have been proper had this action been filed in the Northern District of Ohio because, as the Defendants point out, sexually suggestive emails were generated in and sent from that district, and events relating to Berg's termination took place there.

Because venue would have been proper in more than one district, the Court must decide

4

whether transfer is warranted pursuant to 28 U.S.C. § 1404(a). This Section provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." (Id.). The defendant bears the burden of proving that convenience and justice would be served by transferring the action. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995). The Plaintiff's choice of forum is to be accorded "great deference." Collins v. Garman, No. 07-2370, 2007 WL 2740297, at *4 (E.D. Pa. Sept. 19, 2007) (citing Jumara, 55 F.3d at 880). "[U]nless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." Owatonna Manuf. Co. v. Melroe Co., 301 F. Supp.1296, 1307 (D. Minn. 1969).

In Jumara, The Court of Appeals for the Third Circuit set out a series of private and public considerations that must be balanced in considering a request for transfer of venue under Section 1404(a). See 55 F.3d at 879. The private interests include: (1) plaintiff's choice of forum; (2) defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial conditions; (5) the convenience of witnesses, but only to the extent that they may actually be unavailable at trial; and (6) the location of books and records insofar as these could not be produced in the alternative forum. Id. The public interests to be examined are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the local interest in deciding local controversies; (4) public policies of the fora; and (5) the judges' familiarity with the applicable state law. Id. at 879-880. Courts must consider both sets of factors in light of the general rule that the plaintiff's choice of forum is entitled to great weight. Id.

**Analysis**

The Defendants argue first that transfer to Ohio is warranted because, in essence, Berg's

claims arose there. As the Court has explained, important elements of Berg's claim were based in both Ohio and Pennsylvania. This factor is, at best, neutral, and does not tip the balance in favor of transfer.

The Defendants next argue that it will be inconvenient and expensive for witnesses based in Ohio to appear in Pennsylvania. This contention lacks merit, as does the similar argument based on the location of relevant records. The Defendants have not indicated how many witnesses will be required, nor have they established that these witnesses will be unavailable to testify in person or via video deposition in Pittsburgh. The Defendants have also failed to show that records pertaining to Berg's relatively short tenure in her job will be difficult to locate or to transport to Pennsylvania. "The location of documents factor is neutral '[in] today's era of photocopying, fax machines and Federal Express.'" Aerotel, Ltd. v. Sprint Corp., 100 F. Supp.2d 189, 197 n.2 (S.D.N.Y. 2000) (quoting Coker v. Bank of Am., 984 F. Supp.757, 766 (S.D.N.Y. 1997).

The Defendants' convenience arguments are further weakened by the proximity of this Court to the District Courts for the Northern District of Ohio, which are based in Cleveland, Akron and Youngstown. The Court takes judicial notice of the fact that Warren, Ohio is roughly equidistant from Cleveland and Pittsburgh, at sixty-two miles and fifty-six miles, respectively, and is about forty-six miles from Akron.[3] While Youngstown is adjacent to Warren, the Defendants have indicated that there is no guarantee that this case would be docketed there. (Doc. 8 at 14).

The public interests implicated by the request to transfer venue are largely inapplicable. Ohio's interest in resolving a dispute regarding one of its corporate residents is no greater, at this juncture, than Pennsylvania's interest in resolving a dispute regarding one of its corporate residents. Furthermore, the record does not show that this Court will face difficulty enforcing a judgment, or

---

[3]Source: www.timeanddate.com

that the public policy of either forum favors litigating this matter. This Court is confident that courts in each jurisdiction have had experience with and are well equipped to deal with administrative burdens posed by this case in an expeditious and cost-effective manner, and that their judges are equally well versed in the applicable law.

In sum, the Court is unable to say that "the balance of convenience of the parties is strongly in favor of [the] defendant." Owatonna Manuf. 301 F.Supp. at 1307. It thus finds that the Defendants have failed to meet their burden of demonstrating that transfer of venue to the Northern District of Ohio would serve the interest of justice. The Motion to Transfer (Doc. 7) will, therefore, be denied. An appropriate Order follows.

AND NOW, this 14th day of July, 2008, IT IS HEREBY ORDERED that the Motion for Transfer of Venue filed by the Defendants (Doc. 7) is DENIED. The other Motions raised in Document 7 will be addressed separately in a Report and Recommendation to be filed at a later date.

By the Court,

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

cc: All counsel of record by Notice of Electronic Filing