IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIRSTEN BERG, | ) | |
|     Plaintiff | ) | |
| | ) | |
|   vs. | ) | Civil Action No. 07-1393 |
| | ) | Judge Nora Barry Fischer/ |
| AETNA FREIGHT LINES; | ) | Magistrate Judge Amy Reynolds Hay |
| TRANSPORTATION INVESTMENTS, | ) | |
| INC., | ) | |
|     Defendants | ) | |

REPORT AND RECOMMENDATION

I. RECOMMENDATION

In this Title VII action, two Motions to Dismiss filed by Defendants, Aetna Freight Lines ("Aetna") and Transportation Investments, Inc. ("TII"), pursuant to Fed. R. Civ. P. 12(b)(6), are pending: a Motion to Dismiss TII as a party, and a Motion to Dismiss the retaliation claim set out in Count III of the Complaint.[1] It is respectfully recommended that both Motions ( Doc. 7) be denied.

II. REPORT

**Background**

The Plaintiff, Kirsten Berg ("the Plaintiff" or "Berg"), an Oregon resident, filed a three count Complaint alleging that the Defendants, her employers, created and maintained a hostile work environment, engaged in sexual harassment and gender discrimination, and retaliated against her by terminating her position, all in violation of Title VII, 42 U.S.C. §2000e -2000e-17. Berg alleges that she began working from her home as a freight dispatcher for the Defendants in early August

---

[1] A third motion, a Motion to Transfer Venue was filed at the same Document Number. This Motion was denied by the Magistrate Judge in an Opinion and Order signed filed on July 15, 2008.

2006. (Doc 1. at 3).[2] On March 7, 2007, she received a sexually inappropriate email from the work computer of her supervisor, Aetna's Vice President and General Manager, Thomas Tomasko ("Tomasko"), who worked and lived in Warren, Ohio. Ten days later, Tomasko drove Berg from Aetna's Ohio headquarters to a social event sponsored by TII for Aetna agents in Pittsburgh, Pennsylvania. During that trip - it is not clear whether the two were in Ohio or in Pennsylvania when this happened - Tomasko asked Berg whether she thought that he was "attractive" or "fat." (Doc. 1 at 4). He also claimed that his hands were cold, and touched Berg in an offensive manner. (Id.).

Later the same day, Berg and Tomasko attended the event in Pittsburgh aboard the Gateway Clipper, a vessel which may be rented for cruises along Pittsburgh's three rivers. Berg alleges that on this cruise, Tomasko broadcast sexually suggestive remarks about her over the vessel's sound system, and that these remarks were heard by other attendees. (Id. at 5). Then, in what seems to have been a more private moment, Tomasko told Berg that she was the "prettiest girl" at the event. (Id.). Berg claims that she was also approached by Daniel Singer ("Singer"), an officer of TII, who "rubbed his had up and down the back of Berg's dress," commenting that she had put it on backward. (Id.).

On April 2, 2007, Berg received a second sexually offensive email from Tomasko. (Id.). "On or about April 10, she constructively discharged herself due to Tomasko's sexual harassment," but Tomasko called her, and persuaded her to remain in her job. (Id.). She agreed. She resumed her duties the next day, but alleges that when, as part of a work-mandated procedure, she sought

---

[2]Aetna is a common and contract carrier headquartered in Warren, Ohio. Its business is to transport commodities throughout the United States. TII, a Delaware corporation headquartered in Pittsburgh, Pennsylvania., is "chartered to establish or acquire trucking companies, and to serve as a holding corporation for various trucking and related entities, such as Aetna." (Doc. 8 at 2).

2

credit approval for a transaction from Aetna/TII, she was informed that the department could no longer process her credit requests because her employment had been terminated. Later in the day, Tomasko communicated with Berg, telling her, "We should, you, me, Aetna part ways." (Id. at 6). Berg then notified Douglas McAdams, President of TII and Aetna, of Tomasko's offensive emails, but did not receive a response. (Id.). She filed a sexual harassment charge with the Equal Employment Opportunity Commission in early June 2007, (id.), and received a Notice of Right to Sue the following month. (Id. at 2). This action followed.

**Standard of Review**

Under the standard articulated by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1974 (2007), a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." The court is not obligated to accept inferences if they are unsupported by the facts set out in the complaint, see California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)), and is not required to accept legal conclusions framed as factual allegations. Bell Atl. Corp., 127 S. Ct. at 1965.

<u>The Motion to Dismiss the Retaliation Claim</u>

Under Title VII, "[A] plaintiff establishes a retaliation claim if she shows that she had a reasonable belief that her employer was engaged in an unlawful employment practice and that the employer retaliated against her for protesting against that practice." Drinkwater v. Union Carbide Corp., 904 F.2d 853, 865 (3rd Cir.1990). The statute itself states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because

> he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e-3.

There are three elements to a prima facie claim of retaliation under Title VII: (1) a showing that the plaintiff engaged in protected activity, (2) a subsequent or contemporaneous adverse employer action, and (3) a causal link between the two. Wilkerson v. New Media Tech.Charter Sch., Inc., 522 F.3d 315, 320 (3d Cir. 2008). The Defendants argue that Berg has failed adequately to allege the first and third elements of her claim.

The Defendants allege first that Berg cannot establish that she engaged in protected activity, and, therefore, cannot show a causal link between that activity and her termination. Protected activity constitutes participation in certain Title VII proceedings (the "participation clause") or opposition to discrimination made unlawful by Title VII (the "opposition clause"). Slagle v. County of Clarion, 435 F.3d 262, 266 (3d Cir. 2006). According to the Defendants, the Plaintiff cannot show that she engaged in protected activity under the participation clause, because she did not institute any type of proceeding, Title VII or otherwise, until after she had been terminated. They also challenge the sufficiency of Berg's Complaint with respect to the opposition clause, noting that she alleges that she notified McAdams of Tomasko's emails - again, only after she was terminated.[3]

Berg responds that participating in Title VII proceedings or complaining to an employer are not the only activities protected under the statute; resisting sexual advances constitutes protected activity for purposes of Title VII. It does not appear that the Court of Appeals for the Third Circuit

---

[3] She does not allege that she ever notified McAdams or any one else concerning Tomasko's inappropriate behavior en route to Pittsburgh or aboard the Gateway Clipper. She also does not allege that she made any one aware of Singer's conduct.

4

- or any other Court of Appeals, for that matter - has addressed this question. District Courts confronting the argument are divided. See, e.g., Roberts v. County of Cook, No. 01 C 9373, 2004 WL 1088230 (N.D. Ill., May 7, 2004) (collecting cases illustrating split of authority, but concluding that refusing sexual advances is protected because "victim of harassment should not fear retaliation if she resists sexually predatory behavior by colleagues or supervisors"). At least three District Courts within the Third Circuit have adopted this reasoning. See Straub v. First Media Radio, LLC, No. Civ. A. 2003-237J, 2005 WL 3158042 (W.D. Pa. November 28, 2005); Farrell v. Planters Lifesavers Co., 22 F. Supp.2d 372, 392 (D.N.J.1998), aff'd in part, rev'd in part on other grounds, 206 F.3d 271 (3d Cir. 2000); Armbruster v. Epstein, No. Civ. A 96-CV-1059, 1996 WL 289991 (E.D. Pa. May 31, 1996).

In the Plaintiff's Complaint, she alleges, without elaboration, that before her termination, she objected to Tomasko's conduct and asked him to stop. She makes similar allegations with respect to Singer. (Doc. 1 at 10). Although details of events and the content of communications surrounding her termination are bare-bones, the Court finds that she has alleged facts sufficient, for purposes of the Defendants' Motion to Dismiss, to state a claim for retaliation that is plausible on its face.

### The Motion to Dismiss TII as a Party

In support of their Motion, the Defendants argue first that all claims against TII should be dismissed because TII was not Berg's employer for purposes of Title VII, and does not, in any event, meet the fifteen employee minimum necessary for coverage under Title VII. In her Complaint, Berg alleges that TII has the requisite number of employees, and that she was employed by "Aetna/TII." She contends that she worked as an agent for these entities, and was subject to their rules, regulations and guidelines. She was required to contact their offices for authorization

5

before freight could be scheduled for pick-up, needed load and driver verifications from the Defendants, operated at their discretion, and received or was denied commission by Aetna/TII as they deemed appropriate. According to Berg, these entities had "sole discretion and authority over [her] ability to book drivers to transport loads of freight, the essential functions [sic] of her job." (Doc. 1 at 4).

The Defendants challenge each of Berg's assertions, contending that Aetna and TII are, in fact, distinct entities. The two corporations are located in different states, and have separate and independently-managed human resources policies, employee benefits procedures, and payroll systems. TII lacked day-to-day control over Berg, did not review her work, and did not pay or withhold her commission. (Doc. 8 at 6).[4]

The language of Title VII does not provide guidelines for resolving these competing contentions. It simply states that an employee is "an individual employed by an employer." 42 U.S.C. § 2000e(f). The Supreme Court has held that the question of employee status under Title VII is to be resolved using the test set forth in Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318 (1992). See Walters v. Metro. Educ. Enters., 519 U.S. 202, 211 (1997) ( holding that although Darden was ERISA case, test announced applies to Title VII). In Darden, the Supreme Court held that the factors to be considered in determining employee/employer status are the same as those encompassed by the common-law agency test. These include: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship

---

[4] In support of their respective positions as to whether TII should remain a Defendant, the parties have submitted documents marked as exhibits. Because this matter is before the Court on Motions to Dismiss, the Court declines to consider these materials, confining its attention to the sufficiency of the allegations in the Complaint. These exhibits, and likely many more, will be relevant should this matter proceed to summary judgment.

between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the hired party. Darden, 503 U.S. at 322-24. See also Walker v. Corr. Med. Sys., 886 F. Supp. 515, 520 (W.D. Pa. 1995).

Given the state of the record, it is impossible for the Court to evaluate thoroughly the Darden factors. Because the Court does not have adequate information to apply the governing test, it is too early in the proceedings for it to reach a conclusion regarding the employment relationship between TII and Berg.

The Court's finding is similar with respect to the Defendants' contention that TII must be dismissed as a Defendant because, as to TII, Berg failed to exhaust her administrative remedies. The Defendants contend that TII did not receive notice of and was not named as Berg's employer in the charges that she filed with the EEOC. Berg challenges these conclusions.

Again, the Court does not have enough information to resolve this dispute. It does not have the EEOC records or other information that would allow it to assess the breadth of the charges or scope of the investigation. In many respects, this issue is intertwined with the question of the relationship between Aetna and TII. Whether the Defendants have a viable exhaustion argument simply cannot be determined on this record. It is appropriate, therefore, that this issue, too, be resolved at summary judgment.

III.  CONCLUSION

For the reasons set out above, it is recommended that the Defendants' Motions to Dismiss TII as a Party and to Dismiss Count III of the Complaint ( Doc. 7) be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights.

> Respectfully submitted,
>
> */s/  Amy Reynolds Hay*
> United States Magistrate Judge

Dated: 17 July, 2008

cc: Hon. Nora Barry Fisher
United States District Judge

Counsel of record via Notice of Electronic Filing